1 | BROWN WHITE & OSBORN LLP
THOMAS M. BROWN (Bar No. 117449)
2 | CALEB E. MASON (Bar No. 246653)
KARINEH TARBINIAN (Bar No. 281275)
3 | SCOTT L. MENGER (Bar No. 305877)
333 South Hope Street, 40th Floor
4 | Los Angeles, California 90071-1406
Telephone:  213.613.0500
5 | Facsimile:  213.613.0550
tbrown@brownwhitelaw.com
6 | cmason@brownwhitelaw.com
ktarbinian@brownwhitelaw.com
7 | smenger@brownwhitelaw.com

8 | Attorneys for Plaintiffs
WENDI OPPENHEIMER, JEFFREY
9 | PEREA, AND VANNES
OPPENHEIMER

10

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL  DISTRICT OF CALIFORNIA

13

14 | WENDI OPPENHEIMER, an individual, | Case No.: 8:16-cv-00018-JVS-DFM
JEFFREY PEREA, an individual, and
15 | VANNES OPPENHEIMER an individual, | Judge:    Hon. James V. Selna

16 |               Plaintiffs, | **PLAINTIFFS' WENDI OPPENHEIMER, JEFFREY PEREA, AND VANNES OPPENHEIMER'S:**

17 | v.

18 | THE CITY OF LA HABRA, a | **NOTICE OF MOTION AND MOTION IN LIMINE NUMBER 5 FOR EXCLUSIONARY SANCTIONS PURSUANT TO RULE 37(c)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE FOR DEFENDANTS' SPOLIATION OF EVIDENCE**
municipality; TANNA WILLIAMS, an
19 | individual; G4S SECURE SOLUTIONS
(USA) INC., a Florida corporation; and
20 | DOES 1-10, inclusive,

21 |               Defendants.

22 | *[Declaration of Scott L. Menger filed concurrently herewith]*

23

24 | Date: February 21, 2017
Time: 8:30 a.m.
25 | Dept.: 10C

26

27

28

PLEASE TAKE NOTICE that on February 21, 2017, at 8:30 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable James V. Selna of the above-entitled court, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiffs Wendi Oppenheimer, Jeffrey Perea, and Vannes Oppenheimer ("Plaintiffs") will and hereby do move *in limine* for an order for exclusionary sanctions pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure for Defendants' Spoliation of Evidence.

This motion is based on the attached memorandum of points and authorities, the concurrently filed declaration of Scott L. Menger and exhibits thereto, and the files and records of this case.  This motion is made after a conference of counsel pursuant to Local Rule 16-2.

DATED:  January 24, 2017                    Respectfully submitted,

                                            BROWN WHITE & OSBORN LLP


                                            By   */s/ Scott L. Menger*
                                            _____
                                                    THOMAS M. BROWN
                                                    CALEB E. MASON
                                                    KARINEH TARBINIAN
                                                    SCOTT L. MENGER
                                                    Attorneys for Plaintiffs
                                                WENDI OPPENHEIMER, JEFFREY
                                                    PEREA, AND VANNES
                                                        OPPENHEIMER

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELEVANT FACTS

### A. Background Facts

Between 11:55 a.m. and 12:05 p.m. on January 2, 2015, Daniel Oppenheimer ("Oppenheimer") committed suicide by hanging while in custody at the La Habra City Jail ("the Jail").  Oppenheimer was in a glass-walled booking cell, under the supervision of a jailer, Defendant Tanna Williams ("Williams"), an employee of Defendant G4S Secure Solutions (USA) Inc. ("G4S"), the company that operated the jail under contract with Defendant City of La Habra ("the City").

Despite being in a glass-walled room with a jailer on the other side of the window whose only responsibility was to watch him, Oppenheimer ripped apart his jumpsuit, tied pieces of it into a 3-part ligature, tied the ligature to the metal phone cord on the wall, tied it around his neck, sat down on the floor to put his weight on the ligature, and then strangled to death. The jail surveillance video shows him beginning to rip up his jumpsuit at 11:48 a.m. while sitting on a bench in the cell, then moving from the cell down to the floor at 11:55 a.m.  The last movement Oppenheimer makes is at 11:56:30 a.m., when he moves his hand back and forth above his head, then slumps forward and is completely still until 12:05:35 a.m., when Police Department officers—not Williams—enter the cell and cut the ligature.

Williams admits that she was at her workstation the entire time, until 11:59:59 a.m., when she got up to walk into the Police Department.  The undisputed evidence shows that Williams *looked into the cell* while Oppenheimer was in the process of tying the ligature and/or hanging himself.  Yet instead of immediately intervening and preventing Oppenheimer from hanging himself, Williams walked away from her post, and spent the next five minutes chatting in the Police Department offices.

When Williams returned to her post four minutes and 25 seconds later, she found Oppenheimer unconscious and strangling to death in his cell.  *She failed, again, to provide immediate aid*.  Instead of entering the cell to assist Oppenheimer and

provide immediate medical care, Williams called for backup, then stood outside the cell for another one minute and ten seconds while Oppenheimer strangled.

**B. Facts Specific to this Motion**

On March 11, 2016, Plaintiffs served the City their Requests for Production of Documents, Set One.  Ex. B to the Declaration of Scott L. Menger ("Menger Decl.").  Request for Production Number 6 requested "All COMMUNICATIONS between YOU and anyone other than YOUR attorneys, RELATING TO the INCIDENT."  *Id.*  Request for Production Number 15 requested "All video from all surveillance cameras in CITY jail, taken on January 2, 2015."  *Id.*

Plaintiffs previously filed a Motion for Entry of Default Judgment as to Liability against Defendants, Doc. 69, a ruling on which is still pending.[1]  Jail surveillance video captured the events on January 2, 2015, and is the best objective evidence available in this case.  <u>Incredibly, however, the video recording Defendants produced in discovery stops or freezes at crucial moments</u>.  (The video recording was previously filed with the Court along with Doc. 69, as Exhibit E.)  The video stops or freezes during (1) the period when Oppenheimer is ripping up his jumpsuit, tearing out the zipper, and constructing his ligature; and (2) the period when Sergeant Baylos lifts Oppenheimer after entering the cell.  This freezing destroys the video evidence of (1) what precisely Oppenheimer did while constructing his ligature, and how long it took; and (2) Oppenheimer's appearance when the officers entered the cell.  Defendants have exploited the absence of the video by claiming uncertainty as to when Oppenheimer began ripping up his jumpsuit, how long it took, where he was positioned while he did it, when he began strangling, and how long he was strangling.

Plaintiffs deposed the City's designee, Lieutenant Adam Foster, on January 6, 2017.  Lt. Foster's testimony illuminated stunning facts concerning the City's willful spoliation of video surveillance evidence and the destruction of communications, all

---

[1] Plaintiffs file the present Motion *in limine* in an abundance of caution because their Motion for Entry of Default Judgment, Doc. 69, is still pending.

while the City knew that the criminal investigation of Oppenheimer's suicide was still open and after Plaintiff Vannes Oppenheimer had submitted an administrative claim for damages against the City.

Lt. Foster testified that the City destroyed the original video surveillance system in place on the date of the incident (January 2, 2015), including the server in which video was stored, in May 2015, four months after Mr. Oppenheimer's death, one month after receiving Vannes Oppenheimer's Claim for Damages, and during the pendency of the Orange County District Attorney's investigation). Deposition of Adam Foster ["Foster Depo."], 23:7-20, 39:16-40:18, Menger Decl., Ex. C.

Lt. Foster testified that in the original system, the server that stored the footage was in the watch commander's office, and that officers could watch the footage there, and could manipulate it with a mouse—reverse, fast forward, pause.  Foster Depo., 29:10-31:21, Ex. C.  Because the City destroyed the original system, there is no way to go back and forensically reconstruct the footage, either to determine what Sgt. Baylos did, or to recover the lost footage.

Lt. Foster confirmed that the "accidental" freezing of the footage has—as far as the City's knowledge goes—never before happened.  No one has ever complained of or commented on any footage freezing in the same manner as the video recording from January 2, 2015.  Foster Depo., 34:4-39:15., Ex. C.

Lt. Foster testified that Sgt. Baylos edited the material he provided to the investigators, by eliminating two (at least) camera feeds.  Foster Depo., 29:5-9, Ex. C. The City burned a DVD copy of the footage that day to give to the OCDA's investigators. Foster Depo., 31:2-6, 47:6-15, Ex. C.  Lt. Foster testified that the original video system had 18 cameras—but that Sgt. Baylos deliberately included only 16 camera feeds on the recording provided to the OCDA's investigators.

Lt. Foster testified that the City has a 180-day automatic deletion policy for emails, and that the City made no attempt whatsoever to identify and preserve potentially relevant emails regarding the suicide of Daniel Oppenheimer until

BROWN WHITE & OSBORN
A T T O R N E Y S

"summer 2016"—18 months after the incident.  Foster Depo., 44:10-45:24, 56:9-57:6, 63:2-25, Ex. C.  He testified that the City deleted all emails to and from Defendant Tanna Williams.  Foster Depo., 81:2-83:23, 86:10-22, Ex. C.  He testified that the City made no attempt whatsoever to identify and preserve any other potentially relevant communications—including text messages, voicemails, written notes or other records of conversations—until "early summer 2016"—18 months after the incident.  Foster Depo., 89:2-91:25, 97:15-98:22, Ex. C.  These egregious and abusive spoliation practices warrant terminating sanctions as to liability.

Plaintiffs also seek an order that Defendants bring to trial the jumpsuit Mr. Oppenheimer was wearing when he died. Plaintiffs requested the jumpsuit in discovery.  Ex. B to the Menger Decl., Number 22.  The City responded that The Orange County District Attorney's Office ("OCDA") has the jumpsuit.  The OCDA is willing to produce to the City for trial, but the City apparently is not accepting return of the jumpsuit.  Menger Decl., ¶ 23, Ex. S (OCDA Email to A. Mallett).

## II. ARGUMENT

### A. The Court May Enter Sanctions Against Defendants for Spoliation

Rules 37(c)(1) of the Federal Rules of Civil Procedure permit the Court to sanction Defendants for despoiling evidence that as a result was not provided to Plaintiffs, by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;" "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;" "striking pleadings in whole or in part;" or "rendering a default judgment against the disobedient party." *Id.*, subsections (i)-(iii), (vi).  Thus, it is within the Court's discretion to enter sanctions against Defendants, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, for Defendants' spoliation of evidence.

A district court may impose evidentiary sanctions against a party that has despoiled evidence under its inherent power in response to abusive litigation practices.

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). "'Bad faith' is not required to justify the imposition of sanctions for the spoliation of evidence." *Peschel v. City of Missoula*, 664 F. Supp.2d 1137, 1141 (D. Mont. 2009) (imposing sanction of determining as factual liability (excessive force) established where a video showing the events at issue was lost in the defendant's city's computer system). Destruction of evidence is willful spoliation if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon*, 464 F.3d. at 959. The standard of proof for willful spoliation is preponderance of the evidence. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1052-53 (S.D. CA 2015).

**B.  <u>There Is Overwhelming Evidence of Willful Spoliation by Defendants</u>**

The testimony of Defendants Tanna Williams and the City's 30(b)(6) designee Lt. Foster, the testimony of percipient witnesses Lt. Forgash and Sgt. Baylos, and an examination of the recording of the Jail video surveillance system on January 2, 2015 overwhelmingly demonstrate that Defendants engaged in willful spoliation of multiple forms of evidence critical to prove Plaintiffs' claims for relief.

**1.  Destruction of Video Evidence**

The recording of the Jail video surveillance system taken on January 2, 2015, is the best objective evidence of the events leading to this lawsuit. The City destroyed the original video system and server, leaving only a badly corrupted disc. Lt. Foster testified that Sgt. Baylos edited the material he provided to the investigators, by eliminating two (at least) camera feeds. Ex. C, Foster Depo., 29:5-9. The City burned a DVD copy of the footage that day to give to the OCDA's investigators. Ex. C, Foster Depo., 31:2-6, 47:6-15. Lt. Foster testified that the original video system had 18 cameras, but Sgt. Baylos deliberately provided only 16 camera feeds to the OCDA.

Next, the recording is riddled with stops/freezes at numerous times throughout the video, often at critical moments. For example, at 11:55:20 a.m., the recording of Camera 4 stops/freezes while Oppenheimer is seated on the bench, just as he begins

ripping his jumpsuit.  The recording of Camera 4 then resumes at 11:56:10 a.m. Mr. Oppenheimer is seen seated on the floor next to the telephone with his hand raised over his head and moving slightly.  The camera then stops/freezes again at 12:05:45 a.m., as Lt. Forgash enters the cell and Sgt. Baylos lifts Oppenheimer by the arm.

Lt. Foster testified that the City has destroyed the original video surveillance system in place on the date of the incident (January 2, 2015), including the server in which video was stored, in May 2015.  The City tore out and threw away the entire system, and replaced it with a new one.  Ex. C, Foster Depo., 23:7-20, 39:16-40:18. Lt. Foster further testified that, to the City's knowledge, this freezing/stopping issue had never before happened in the same manner as the video recording from January 2, 2015.  Ex. C, Foster Depo., 34:4-39:15.  This fact is also confirmed by the testimony of Lt. Forgash and Sgt. Baylos, who have nearly three decades of experience working in the Jail.  Ex. D, Forgash Depo., 111:2-113:20; Ex. E, Baylos Depo., 76:10-78:9.)

Forensic expert Doug Carner ("Carner"), opined that the recording was created by a digital video recorder (DVR) capable of encapsulating video content from multiple cameras into a single file.  Declaration of Carner, ¶ 5, Ex. F.  Carner considered and excluded all possible accidental or equipment-related explanations for the freezing.  Ex. F, ¶ 6.  Further, he opines that the stopping/freezing issue is a result of human error in the copying of the original recording onto the DVD sent to the Orange County District Attorney's Office investigators, and that the original recording would most likely not have contained the stops/freezes.  However, because the original camera system and server were destroyed, he cannot analyze the original video recording or recover the lost footage.

## 2.    Destruction of Communications

Lt. Foster testified that the City has a 180-day automatic deletion policy for emails, and that the City made no attempt whatsoever to identify and preserve potentially relevant emails regarding the suicide of Daniel Oppenheimer until "summer 2016"—18 months after the incident.  Ex. C, Foster Depo., 44:10-45:24,

6

56:9-57:6, 63:2-25.  He testified that the City deleted all emails to and from Defendant Tanna Williams.  Ex. C, Foster Depo., 81:2-83:23, 86:10-22.  City emails in existence concerning Oppenheimer's suicide exist because City Manager Jim Sandro's email account is not subject to the 180-day automatic deletion policy, or because other City employees printed hard copy versions of these communications prior to their deletion from the City's system.  Ex. C, Foster Depo., 71:25-73:4, 80:15-81:1.  He testified that the City made no attempt whatsoever to identify and preserve any other potentially relevant communications—including text messages, voicemails, written notes or other records of conversations—until "early summer 2016"—18 months after the incident.  Ex. C, Foster Depo., 89:2-91:25, 97:15-98:22.

## C.    **Defendants Were on Notice of Potential Litigation**

There is no question that Defendants were on notice of the potential for litigation related to Oppenheimer's suicide on January 2, 2015 when they destroyed crucial evidence of this case.  In the Ninth Circuit, a litigant has a duty to preserve evidence it knows or reasonably should know is relevant "as soon as a potential claim is identified."  *In re Napster,* 462 F.Supp.2d at 1067; *Leon*, 464 F.3d at 959 ("destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed.") (emphasis in original) (citations and quotations omitted).

Defendants had a legal obligation to preserve evidence that they destroyed because a criminal investigation into the suicide was open and ongoing, and because Defendants had ample notice of their need to preserve relevant evidence for this litigation.  First, the Orange County District Attorney's Office ("OCDA") opened a criminal investigation into Oppenheimer's suicide on January 2, 2015; the investigation was open until September 28, 2015.  Second, Vannes Oppenheimer filed a Claim for Damages with the City on April 20, 2015.  (Ex. G.)  With these facts well-known to the City, the City (or its employees and agents) still decided that it could: (1) eliminate two of the camera feeds from the recording provided to the OCDA

immediately following the suicide; (2) provide the OCDA with a version of the recording that is riddled with freezes during crucial periods of time; (3) destroy the original video surveillance system and replace it with a new one in May, 2015, so that the only version of the recording still in existence is the version given to the OCDA; and (4) permit emails sent by City employee email accounts related to the suicide, including every email sent to and from Tanna Williams, to be destroyed pursuant to its 180-day email deletion policy.  The City's brazen destruction of critical evidence during the pendency of multiple legal proceedings leads to only one conclusion: that the City willfully despoiled evidence to avoid liability.[2]

**D.**      **Plaintiffs Will Be Greatly Prejudiced**

Plaintiffs will suffer severe prejudice at trial as a result of Defendants' willful spoliation of evidence.  Defendants are the only living percipient witnesses.  The standard for prejudice is "whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 (9th Cir.1988).  The Ninth Circuit has applied this standard and found prejudice on very similar facts.  *See Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995) (imposing terminating sanctions against defendant's counterclaim because defendant's refusal to produce documents "forced Anheuser to rely on incomplete and spotty evidence" at trial).

*Peschel v. City of Missoula*, 664 F.Supp.2d 1137 (D. Mont. 2009), in which the

---

[2] It appears as though Defendants have attempted to conceal documents from the outset of this case, even from their present counsel.  Pursuant to the parties' stipulation dated November 15, 2016, Doc. 55, and the Court's order, Doc. 56, the Court (Magistrate Judge McCormick) is currently reviewing a cache of documents released by Defendants' prior counsel, Ferguson, Praet, & Sherman.  The parties have stipulated that all documents within that cache not protected by the attorney client or attorney work product privileges shall be produced to Plaintiffs.  As part of its review, the Court prepared a list of files within that cache.  Among those are 74 files labeled "Do NOT Forward to New Counsel."  Ex. R to the Menger Decl., p. 4-9.  Current defense counsel has informed the Court that it does not know what these documents contain.  Menger Decl. ¶ 22.

district court made a factual finding of liability (excessive force) as a spoliation sanction against the City of Missoula, is almost identical.  Peschel was a § 1983 action for unlawful arrest; the city accidentally deleted video recording of the arrest.  *Id.* at p. 1149.  The district court found that the city had despoiled the video sanctioned the defendant by holding "as established for purposes of the case, that the arresting officers used unreasonable force to effect the arrest of Peschel."  *Id*. at p. 1145.  The court continued: "The Court is mindful that the sanction chosen effectively grants summary judgment to Peschel on the issue of unreasonable force and, as such, is tantamount to a default judgment."  *Id*.  But the Court deemed that extreme sanction necessary because with no lesser sanction would suffice. Plaintiffs here may be harmed *more* than the *Peschel* plaintiff, because in *Peschel*—unlike here—there were other percipient witnesses to the incident.  *Id.*

The destruction of communication evidence is also highly prejudicial to Plaintiffs.  In *William T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443 (C.D. Cal. 1984), the trial court issued terminating sanctions against the defendant following a finding of willful spoliation.  *Id.* at p. 1456.  The court found that the defendant had "knowingly and purposefully permit[ted] its employees to destroy key documents and records" and deemed that striking the defendants' answer and entering default for plaintiff was appropriate because "[defendant's] destruction of critical documents deprived [plaintiff] of access to the objective evidence it needed to build its case against [defendant]."  *Id.* at p. 1455.

Plaintiffs will never know what those messages said, because Defendants, with full knowledge of actual and foreseeable litigation—deprived them of that opportunity.  When "the relevance of . . . [destroyed] documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents."  *Leon*, 464 F.3d at 959.

Plaintiffs have been prejudiced by the spoliation of video and communication evidence that is directly relevant to Plaintiffs' claims, and in the case of the video

recording, constitutes a destruction of Plaintiffs' best evidence.  "[T]he duty to preserve evidence relevant to litigation of a claim is a duty owed to the *court*, and not a party's adversary." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525 (D. Md. 2010) (citing *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal 1987)).  As *Victor Stanley, Inc.*, arguably the most comprehensive caselaw discussion of spoliation law in the United States, provides, "[t]he court's inherent authority to impose sanctions for spoliation of evidence is a means of preserving 'the integrity of the judicial process' so that litigants do not lose 'confidence that the process works to uncover the truth.'  The civil justice system is designed for courts to decide cases on their merits, and to do so, the fact-finder must review the facts to discern the truth." *Id.* at 525-26 (citations omitted).   Defendants' destruction of crucial evidence in this case directly prevents the jury from discerning the truth, and directly threatens the integrity of the judicial process.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs request a factual finding that Defendants engaged in willful spoliation of evidence, warranting an entry of sanctions pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure that the Court deems appropriate.

DATED:  January 23, 2017                         Respectfully submitted,

BROWN WHITE & OSBORN LLP


By     */s/ Scott L. Menger*
                    THOMAS M. BROWN
                    CALEB E. MASON
                    KARINEH TARBINIAN
                    SCOTT L. MENGER
                    Attorneys for Plaintiffs
                    WENDI OPPENHEIMER, JEFFREY
                    PEREA. AND VANNES OPPENHEIMER

4814-5156-2560, v. 1